IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **08-cv-449-JLK**

**PATRICIA F. SIMMONS,**

Plaintiff,

v.

**SYKES ENTERPRISES, INCORPORATED, a Florida corporation,**

Defendant.

---

MEMORANDUM OPINION AND ORDER

---

**Kane, J.**

After being terminated from her position as a Human Resources Associate at a global business process outsourcing firm, Plaintiff filed suit in this court asserting a federal age discrimination claim as well as a breach of contract claim. Defendant has

moved for Summary Judgment on both claims, and for the reasons stated below I grant the Motion as to both claims.

Because the record before me fails to raise a colorable inference that Plaintiff suffered discrimination or retaliation on the basis of her age or that Defendant breached a contractual duty to Plaintiff, summary judgment on these claims is appropriate.

## FACTS

Plaintiff Patricia F. Simmons, a white female in her early 60s, was first hired by Defendant Sykes Enterprises, Inc. ("Sykes"), as a phone technician on August 1, 1997. She was transferred to the position of Human Resources Technician/Assistant three months later–a functional role she continued in until her termination on August 28, 2007. As a Human Resources Technician/Assistant, Simmons had access to confidential personal information concerning other Sykes employees, and she was expected to maintain the confidential nature of this information.

Before the commencement of the investigation leading to her termination, Simmons received consistently positive reviews from her supervisors.  In the months immediately preceding her termination, however, Simmons alleges that the work environment at Sykes had become hostile and threatening.  Simmons blames this change on the June 2007 return of Persephone Jones as Site Director at the Sterling, Colorado, office.[1]  Upon her return, Jones allegedly told Simmons that she thought she had retired

---

[1]Simmons also claims that Amanda Owen, the Human Resources Manager at the Sterling facility, made negative comments about Simmons.  Simmons was told of these comments by Sharon Gaddis, however, after her termination.  As such, they could not have impacted her perception of the work environment in the time immediately preceding her termination.

and shortly thereafter commented that at her age, Simmons should slow down or she would have a heart attack.  Though Simmons attempted to avoid Jones by keeping a low profile, she never reported or complained about Jones' statements.  See Defendant's Motion for Summary Judgment, p. 14; Plaintiff's Opposition Brief, p.3; P. Depo., p. 174, ln. 1-6.

In August of 2007, Sykes began an internal investigation into the improper disclosure of an employee's confidential medical information.  This investigation was led by Jones and Jeff Bieker, Regional Human Resources Director.  In the course of this investigation, Jones and Bieker determined that another Human Resources Associate, Sharon Gaddis, had disclosed the confidential medical information of Heather Mosenteen, another Sykes employee.  Based on their interview with Gaddis, Jones and Bieker further determined that Gaddis had learned this information from Simmons.

On August 6, 2007, Bieker and Jones met with Simmons to discuss these allegations.  Before questioning Simmons, they asked her to sign a Notice of Investigation, an internal document outlining Sykes' expectations of privacy and the confidential nature of the investigation.[2]  During this initial interview, Simmons denied having disclosed any confidential medical information to Gaddis.  Bieker and Jones next met with Simmons on August 9, and once again, despite their allegation that Simmons

---

[2]The NOI informs participants that they will not be retaliated against for participating in the investigation.  They may be subject to discipline, however, up to and including termination, for divulging confidential information, threatening or taking acts of retaliation against a participant, providing false or misleading information or making untruthful allegations against another employee. P. Depo. Exhibit K.

was the only possible source for this information, Simmons denied any wrongdoing.  In a subsequent phone call with Candace Harry, Sykes' Global Human Resources Compliance and Safety Manager, and Janice DiRose, Sykes' Human Resources Counsel and Director of Global Compliance, Simmons once more denied having disclosed any confidential information to Gaddis.

Based on perceived inconsistencies in Simmons' statements during the course of the investigation, as well as Sykes' belief that she could not be trusted with confidential information, James, Bieker, DiRose, and Amanda Owen, the Human Resources Manager at the Sterling facility, recommended that Simmons be terminated. Based on this recommendation, as well as the results of the investigation, Jenna Nelson, Sykes' Senior Vice President of Human Resources, made the decision to terminate Plaintiff's employment.[3]

Jones and Owen met with Simmons on August 28, 2007, and informed her that she was terminated immediately.  She was subsequently replaced by a younger employee. Gaddis, who was 23 years old, was also terminated for her violations of company policy. Following her termination, Simmons contacted Sykes' corporate office to contest her termination.  In reply, Nelson called Simmons to inform her that she had been terminated because of inconsistencies in her statements during the investigation.  Nelson also

---

[3]  Simmons argues that Nelson was not the party ultimately responsible for making the decision to terminate her.  She produces insufficient evidence, however, to raise a genuine issue of material fact that either Jones or Owen were the ultimate decisionmakers.  At best, she has raised the possibility that Janice DiRose was the ultimate decisionmaker in this case.  For purposes of deciding this summary judgment motion, I will assume that either DiRose or Nelson was the ultimate decisionmaker.

informed Simmons that she had to terminate Simmons out of concern that Mosenteen

would sue Sykes for breach of confidential information.

After this conversation, Simmons filed a Charge of Discrimination with the Equal

Employment Opportunity Commission on Nov. 9, 2007.  On Dec. 7, 2007, the E.E.O.C.

issued a Dismissal and Notice of Rights to Simmons.  Simmons then commenced this

action on March 4, 2008, within 90 days of her receipt of the Dismissal and Notice of

Rights.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir.

2008).  A fact is material if it could affect the outcome of the suit under governing law; a

dispute of fact is genuine if a rational jury could find for the nonmoving party on the

evidence presented.  *Id*.

On a motion for summary judgment, the moving party bears the burden of

demonstrating that no genuine issue of material fact exists.  *Id.* at 1145.  Where, as here,

the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy

this burden by demonstrating a lack of evidence for an essential element of the

nonmovant's claim.  *Id*.  In deciding whether the moving party has carried its burden, I do

not weigh the evidence and instead must view it and draw all reasonable inferences from

it in the light most favorable to the nonmoving party.  *Id*.  Neither unsupported

conclusory allegations nor mere scintilla of evidence, however, are sufficient to create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). When a moving party has carried its burden under Rule 56(c), more than "some metaphysical doubt" as to the material facts must be demonstrated by the nonmovant to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I. Age Discrimination Claim

Under the Age Discrimination in Employment Act (ADEA), "it is unlawful for an employer . . . to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1)(2006). The ADEA requires employers "to evaluate [older] employees . . . on their merits and not on their age." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993)). Termination of an employee in the protected class does not, standing alone, give rise to an inference of discrimination; employers are free to terminate at-will employees for any reason, as long as it is not unlawful. *Adamson*, 514 F.3d at 1153 (citing *Neal v. Roche*, 349 F.3d 1246, 1252 (10th Cir. 2003).

Accordingly, in order to prevail under the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged

employer decision." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (citing

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 141-43, 147 (2000)).[4]  This may

be proven either by direct or circumstantial evidence of age-based discrimination.  *Id.*

*See also Adamson*, 514 F.3d at 1145.

### A.  Direct Evidence

Direct evidence demonstrates, without inference or presumption, that the

employment termination was discriminatory.  *Adamson*, 514 F.3d at 1145 (citing *Ramsey*

*v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)).  In order to establish

direct evidence of discrimination, a plaintiff must produce evidence of "an existing policy

which itself constitutes discrimination" or "oral or written statements on the part of a

defendant showing a discriminatory motivation."  *Hall v. U.S. Dep't of Labor*, 476 F.3d

847, 854-55 (10th Cir. 2007).  "Statements of personal opinion, even when reflecting

personal bias or prejudice, do not constitute direct evidence of discrimination, but at most,

are only circumstantial evidence of discrimination because the trier of fact must infer

discriminatory intent from such statements."  *Id.* at 855 (citing *Shorter v. ICG Holdings,*

*Inc.*, 188 F.3d 1204, 1207 (10th Cir. 1999).

Simmons asserts that statements made by James and Owen constitute direct

evidence that her termination was discriminatory.  Owen's alleged statements that

Simmons irritated her, that she wished Simmons would retire, and that Simmons'

memory was failing are not direct evidence, as they require an inference of discrimination

---

[4]I address Defendant's argument that *Gross* has fundamentally altered the *McDonnell Douglas* framework *infra* at note 5.

and are susceptible to both benign and discriminatory interpretations.   Similarly,  James'

statement that she thought plaintiff "had already retired" also requires an inference of

discrimination and is therefore not direct evidence of discrimination.  Finally, James'

statement that Simmons had better "slow down because at [her] age [she's] going to have

a heart attack if [she] keeps this up" was one of personal opinion and as such is not direct

evidence of discriminatory bias in the decision to terminate Simmons.  Having

determined that Simmons has not produced direct evidence of discrimination, I must now

determine whether she has produced sufficient circumstantial evidence of discriminatory

bias in Sykes' termination decision to survive summary judgment.

### B.  Circumstantial Evidence

At the summary judgment phase of ADEA cases, the 10th Circuit applies the three-

stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973), to prove discrimination when no direct evidence of discrimination exists.  *E.g.,*

*Adamson*, 514 F.3d at 1145.[5]

### 1.  Prima Facie Case

---

[5]Defendant argues that the *McDonnell Douglas* framework has been significantly altered by the Supreme Court's ruling in *Gross*.  According to the Defendant, Plaintiff must establish that age was the "but for" cause of her termination.  Though this assertion is correct, it does not alter the McDonnell Douglas framework applied by courts at the summary judgment phase. *Gross* does not impose a heightened evidentiary burden on a plaintiff; it merely clarifies that the burden of persuasion remains with the plaintiff throughout the proceedings, even in causes of action based on a mixed motive theory.  Furthermore, the Supreme Court specifically stated that it had not "definitively decided" whether the evidentiary framework of *McDonnell Douglas* applies to ADEA cases.  411 U.S. at 793.  Until the Supreme Court or the Tenth Circuit hold otherwise, the *McDonnell Douglas* framework continues to apply in this case.  *See, e.g., Riggs*, 497 F.3d at 1114-15.

Under the *McDonnell Douglas* framework, a plaintiff may create a rebuttable inference of discrimination by establishing a prima facie case. *Id.* In order to establish a prima facie case of age discrimination, a plaintiff must show that she was: (i) within the protected class of individuals 40 or older; (ii) performing satisfactory work; (iii) terminated from employment; and (iv) replaced by a younger person. *Adamson*, 514 F.3d at 1146 (citing *Greene*, 98 F.3d at 557-60). While the burden of establishing a prima facie case is not high, it is real, and must be sufficient to warrant the presumption of liability in plaintiff's favor. *See Greene*, 98 F.3d at 558; *accord Adamson*, 514 F.3d at 1146. Based on the evidence in the record, especially the decision by Sykes to terminate both Gaddis (an unprotected party) and Simmons as a result of this investigation, it is not entirely clear that Simmons has met this burden. For purposes of this summary judgment motion, however, I will assume that Simmons has established a prima facie case.

### 2. *Facially Nondiscriminatory Justification for Discharge*

Once Simmons has established a prima facie case, the burden of production then shifts to Sykes to produce a legitimate, non-discriminatory reason for its actions. *Greene*, 98 F.3d at 558. Sykes asserts that Simmons was terminated because "it believed that she could no longer be trusted based on the inconsistencies in [her] statements during the investigation." Defendant's Motion for Summary Judgment, p. 15. According to Sykes, these inconsistencies suggested that Simmons had in fact "disclosed confidential medical information despite her knowledge and awareness of [Sykes'] policies regarding confidential medical information." *Id.* Based on this violation, Sykes felt Simmons could

no longer be trusted to protect the confidentiality of sensitive information.  *Id.*  Though

Simmons contests these reasons as pretextual, she does not argue that on its face this is a

legitimate, non-discriminatory reason.

### 3.  Pretext

Upon proffer of a legitimate, non-discriminatory reason for the termination

decision, the burden shifts back to the Simmons to "show that [her] race, age, gender, or

other illegal consideration was a determinative factor in the defendant's employment

decision, or show that the defendant's explanation for its action was merely pretext."

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002)(citing *Kendrick v.

Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir 2000)).  Significantly, "the

evidence which a plaintiff can present in an attempt to establish that a defendant's stated

reasons are pretextual may take a variety of forms . . .. A plaintiff may not be forced to

pursue any particular means of demonstrating that a defendant's stated reasons are

pretextual." *Kendrick*, 220 F.3d at 1230.  In order to survive summary judgment,

however, Simmons must present sufficient evidence that the proffered reasons are

unworthy of belief.  *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance

Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999).

Simmons advances a variety of arguments in support of her claim that Sykes'

justifications for Simmons' discharge were pretextual.  First, she argues that Sykes' stated

reasons for her termination were false.  Second, she argues that Sykes' belief that she

could not be trusted with confidential information was subjective, raising an inference

10

that it is pretextual.  Third, she argues that the individuals responsible for deciding to

terminate her employment were motivated by discriminatory bias as evidenced by

statements made before Simmons' termination.  Fourth, she argues that the

decisionmaker, even if she was not motivated by discriminatory bias, acted as a rubber

stamp in deciding to terminate Simmons.  Finally, she argues that procedural irregularities

in the termination process are evidence of pretext.

### a.  False Justification for Termination

Simmons first argues that Sykes' stated reasons for terminating her employment

were false.  Plaintiff's Brief in Opposition, p. 27-32, 35-39.  According to Simmons, there

were no inconsistencies in the statements she made during the course of the internal

investigation and she did not disclose confidential information.  Based on these

assertions, Simmons argues that these reasons are merely post hoc rationalizations.  I find

this argument unavailing.

The accuracy of these proffered reasons is of no great consequence to determining

whether or not they are merely a pretext.  "Evidence that the employer should not have

made the termination decision–for example, that the employer was mistaken or used poor

business judgment–is not sufficient to show that the employer's explanation is unworthy

of credibility."  *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th

Cir. 2007); *see also Simms*, 165 F.3d at 1330 ( a reviewing court is not to act as a "super

personnel department that second guesses employers' business judgments").  Thus, the

relevant inquiry is:

> whether the employer's stated reasons were held in good faith at the time of the
>
> discharge, even if they later prove to be untrue, or whether plaintiff can show that
>
> the employer's explanation was so weak, implausible, inconsistent or incoherent
>
> that a reasonable fact finder could conclude that it was not an honestly held belief
>
> but rather was subterfuge for discrimination.

*Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *see also Riggs v.*

*Airtran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007).  In making this

determination, the court must consider the facts as they appeared to the person making the

employment decision.  *Kendrick*, 220 F.3d at 1231; *see also McKnight v. Kimberley*

*Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998)(finding that plaintiff failed to establish

pretext where defendant discharged plaintiff after conducting an investigation into a

subordinate employee's allegations of sexual misconduct on the part of the plaintiff and

believed the allegations to be true, even though plaintiff presented evidence to the district

court that the allegations may have been false).

Simmons' arguments fail to raise a genuine issue of material fact as to the falsity

of Sykes' proffered explanations.  Sykes has consistently relied upon the  perceived

inconsistencies in Simmons' statements during the course of the investigation as the

reason for her termination.  Further, Sykes' has introduced evidence of a typewritten and

signed statement by Sharon Gaddis, implicating Simmons as the source of the

confidential information.[6]  Even viewing Simmons' evidence in the light most favorable

---

[6] Gaddis' statement says in pertinent part that "And [Simmons] proceeded to tell me that there were a few people at one time who had got[sic] gastric bypass on our company insurance.

to her position, this evidence only demonstrates that Sykes may have been unwise and Nelson/DiRose may have exercised questionable judgment.  It does not, however, draw into question whether Sykes and Nelson/DiRose actually relied, honestly and in good faith, upon the appearance of improprieties arising from the evidence gathered during the course of the internal investigation.[7]  Simmons has not shown Sykes' explanation to be so "weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination."  *Young*, 468 F.3d at 1250.  As a result, Simmons has failed to raise a genuine issue of material fact regarding the falsity of Sykes' explanation.

### b. Subjective Belief

Simmons next argues that Sykes' determination that it couldn't trust Simmons with confidential information is a subjective criteria and that this constitutes sufficient basis for a finding of pretext.  Plaintiff's Brief in Opposition, pp. 32-35.  In some cases, reliance on subjective criteria in making and justifying a termination decision may be evidence of pretext.  *Simms*, 165 F.3d at 1328.  Though courts view the use of subjective evaluations with skepticism, an employer's reliance on subjective criteria is not *per se*

---

[Simmons] named a few names.  Heather Mosenteen was the[sic] of the names that came up in the conversation."  Though Simmons argues that Gaddis' typewritten statement does not state that she learned of Mosenteen's surgery from Simmons, this argument is unavailing.  Gaddis' statement, though not grammatically correct, is not ambiguous in its declaration that Simmons and Gaddis had previously discussed Mosenteen's surgery.  Further, Simmons' conclusory allegations that the statement was false and incomplete  are insufficient to draw the validity of this signed declaration into question.

[7]As is discussed *supra* at note 3, despite Simmons' arguments to the contrary, she has not raised a genuine issue of material fact as to the identity of the ultimate decisionmaker in this case.

pretextual. *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 987 (10th Cir. 1996).  The

legitimacy of a subjective justification  must be viewed in light of the particular facts of

the case. *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981).

As discussed above, Simmons has failed to produce sufficient evidence to cast

doubt on Sykes' good faith belief that Simmons had made inconsistent statements in the

course of the investigation and that she had disclosed confidential information.  Such

belief, even if inaccurate, forms an adequate basis for the conclusion that Simmons could

not be trusted with confidential information.  As a result, this argument fails to prove that

Sykes' stated reasons for terminating Simmons were pretextual.

### c. *Decisionmaker Motivated by Discriminatory Bias*

Simmons also argues that James and Owen made the ultimate decision to terminate

her and that they were motivated by discriminatory bias.[8]  Plaintiff's Brief in Opposition

pp. 21-25.  As evidence of their bias, she points to the statements discussed above. *See*

*supra* pp. 6-7.  "Age-related comments referring directly to the worker may support an

inference of age discrimination."  *Cone v. Longmont United Hospital Assoc.*, 14 F.3d 526,

531 (10th Cir. 1994).  Even clearly discriminatory statements, however, if unrelated to the

challenged action, "are insufficient to show discriminatory animus in termination

decisions." *Id.*  In order to show pretext sufficiently, a plaintiff must demonstrate a

sufficient nexus between the allegedly discriminatory statements and the termination

_____

[8]For purposes of analyzing this argument, I am accepting Simmons' contention that
James and Owen made the ultimate decision to terminate her.

14

decision.  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000)(citing *Cone*, 14 F.3d at 531).

As discussed above, the statements plaintiff attributes to Owen are not necessarily age-based.  As a result, Simmons has produced no proof that Owen had any discriminatory animus.  James' statement that she thought Simmons had retired is similarly ambiguous.  The only statement upon which Simmons can conceivably rely is James' statement that at her age Simmons had better slow down or she would have a heart attack.  Though age-based comments may support an inference of discrimination, "isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions."  *Cone*, 14 F.3d at 531. Simmons has failed to produce any evidence linking this off-hand comment to the termination decision.  As a result, Simmons has not raised a credible argument that the decision to terminate her was motivated by discriminatory bias.

### d.  Decisionmaker Acted as Rubber Stamp or "Cat's Paw"

If Nelson or DiRose were in fact the ultimate decisionmakers in this challenged action, Simmons argues that they merely acted as a rubber stamp or "cat's paw" in approving the recommendations of Owen and James.  Plaintiff's Brief in Opposition, pp. 25-26.  In certain circumstances a plaintiff may show pretext by showing "that the decisionmaker followed the biased recommendation [of a subordinate] without independently investigating the complaint against the employee." *E.E.O.C. v.BCI Coca Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 485 (10th Cir. 2006)(quoting *English v. Colo. Dep't of Correction*, 248 F.3d 1002, 1011 (10th

15

Cir. 2001).  Where the decisionmaker has conducted an independent investigation of the complaint, however, courts have found subordinate liability inappropriate.  *See Kendrick*, 220 F.3d at 1231-32 (finding it "[i]mportant[ ]" that "in the course of his investigation" the decisionmaker asked the employee "to give his version of the exchange," but the employee declined to do so); *English*, 248 F.3d at 1011 (noting that the decisionmaker met twice with the employee and his attorney, and specifically asked for evidence rebutting or mitigating the findings of the allegedly biased subordinates).

Simmons' argument that "[a]n employer's allegedly independent investigation does not shield an employer from discriminatory animus of a decision maker [sic], or from the animus of a subordinate employee," Plaintiff's Brief in Opposition, p. 25,  is completely unsupported by case law.  The case cited by Simmons in support of this proposition actually reaches the opposite conclusion.  See *E.E.O.C.*, 450 F.3d at 488 ("because a plaintiff must demonstrate that the actions of the biased subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee").  Further, Simmons' evidence that no independent investigation was conducted is unconvincing.  As in *Kendrick* and *English*, cited above, Nelson's investigative team, Harry and DiRose, spoke directly with Simmons before making the recommendation to terminate her.  Defendant's Motion for Summary Judgment, p. 9.  Plaintiff has produced no evidence that either Harry or DiRose had any discriminatory animus towards her, and she has admitted that she knows of no bias held by Harry, DiRose, or Bieker.  Plaintiff's Depo., p. 152, ln. 7-25; p. 153, ln. 1-6.  This secondary investigation is sufficiently independent of Jones to prove that the ultimate

decisionmaker did not act as a rubber stamp or "cat's paw" for the alleged discriminatory animus of Jones.

### e. Procedural Irregularities

Finally, Simmons argues that procedural irregularities in the decision to terminate her are evidence of pretext. Plaintiff's Motion in Opposition, pp. 39-40. In *Simms*, the 10th Circuit cites "falsifying or manipulating hiring criteria" as examples of a "disturbing procedural irregularity" sufficient to support an inference of pretext. *Id.* Simmons claims that uncertainty as to the identify of the ultimate decisionmaker in her case is sufficient evidence of a "disturbing procedural irregularity" giving rise to an inference of pretext. Even assuming *arguendo* that there is uncertainty as to the identity of the person responsible for making the decision to terminate Simmons, Simmons points to no policy outlining the Defendant's procedure for reaching termination decisions. Absent evidence of procedural regularity, it is not possible to determine that Defendant's behavior in this case was irregular. As such, Simmons' argument fails to raise sufficient proof of pretext.

### II. Breach of Contract Claim

To prevail on a breach of contract claim, a plaintiff must establish (i) the existence of a contract; (ii) performance by plaintiff pursuant to the terms of the contract; (iii) defendant's failure to perform under the contract terms; and (iv) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)(citations omitted). In interpreting the terms of a contract, the agreement must be read in its entirety. *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009)(citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984). Unless a contract is ambiguous, reviewing courts give effect to the plain and

ordinary meaning of its terms. *Id.* (citing *E. Ridge of Ft. Collins, LLC v. Larimer and Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005)).

In the instant case, Simmons argues that the Notice of Investigation was a contract giving rise to duties on the part of both herself and Sykes. Assuming for the sake of argument that this in fact a contract and that Simmons has performed pursuant to the terms of the contract, I must determine if the contested provision actually gives rise to a cause of action for breach by Sykes.

The contested provision provides that "[an employee participating in the investigation is] protected from any potential retaliation stemming from [their] participation in this investigation." Sykes Notice of Investigation, Doc. 39-20. Based on the principles of interpretation cited above, I must give plain meaning to these terms in relation to the entire agreement. A separate provision of the NOI provides that a participant in an investigation may be terminated for "divulging confidential information or violation of the confidentiality requirements" of the investigation or "providing false or misleading information." *Id.* Thus, it seems clear that Sykes' has reserved the right to terminate an employee for violations of confidentiality or providing false or misleading information, even if they are a participant in an investigation. Further, the plain meaning of the contested provision indicates that it is intended to protect a participant from retaliation stemming from participation in the investigation–not from past violations of company policy.

As discussed above, Sykes claims to have terminated Simmons for inconsistencies in statements she made during the course of the investigation, as well as disclosure of the confidential information of another employee in violation of company policy. Simmons claims she was fired because of the discriminatory animus of her direct supervisors. Neither Sykes' nor

18

Simmons' justifications for the termination decision constitute retaliation for participation in the investigation.  Accordingly, Simmons' argument that Sykes has breached a contractual duty fails.

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 30) is GRANTED in full.  Judgment shall be entered in favor of the Defendant.  Parties shall bear their own costs.

Dated:  November 18, 2009

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE